**Michael Grinblat** (4159752)
Law Offices of Michael Grinblat
817 Broadway, Fourth Floor
New York, NY 10003
Tel: (347) 796-0712
Fax: (212) 202-5130
Email: michael.grinblatesq@gmail.com
*Attorney for the Plaintiff*

## IN THE UNITED STATES DISTRICT COURT
## IN AND FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| **SEMYON GRINBLAT**, individually and on behalf of all others similarly situated, | **COMPLAINT** |
| Plaintiff, | |
| -against- | **CASE NO.: 18-cv-6879** |
| **CORELLE BRANDS HOLDINGS INC., HABITAT FOR HUMANITY NEW YORK CITY, INC., JOHN DOE 1-X**, persons yet unknown, **Limited Liability Companies, Partnerships, Corporations 1-X**, entities yet unknown, | **JURY DEMANDED** |
| Defendants. | |

## CIVIL COMPLAINT

The Plaintiff, Semyon Grinblat, as and for his complaint against the defendants, respectfully brings before the Court the below allegations.

## STATEMENT OF THE PLAINTIFF'S CLAIMS

1.  This is an action under Title III of the Americans with Disabilities Act of 1990 (the "ADA") to enjoin unlawful discrimination based on disability. The Plaintiff, SEMYON

1

GRINBLAT, was discriminated against on the basis of disability and denied full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of places of public accommodation owned, leased, controlled, or operated, by the defendants, CORELLE BRANDS HOLDINGS INC., HABITAT FOR HUMANITY NEW YORK CITY, INC., JOHN DOE 1-X, persons yet unknown, Limited Liability Companies, Partnerships, Corporations 1-X, entities yet unknown.

2. The Plaintiff files this action for himself, and those similarly situated, complaining of the violations of Title III of the ADA. This action is brought under the ADA, 42 U.S.C. §12182, §12183 and §12188(a) – incorporating by reference the remedies and procedures found in 42 U.S.C. 2000a-3, §204 of the Civil Rights Act of 1964 – the ADA's Accessibility Guidelines, 28 CFR Part 36, subpart D, the 2004 ADA Accessibility Guidelines ("ADAAG") at 36 CFR Part 1191, appendices B and D, 2010 ADA Standards for Accessible Design (hereinafter "2010 Standards"), the Building Code of the State of New York, as well as New York State Civil Rights Law §40-c and §40-d, New York State Human Rights Law §296 and New York City Human Rights Laws [Administrative Code] §8-107.

3. The Plaintiff seeks compensatory, statutory and punitive damages, including, but not limited to, damages for personal injuries, pain of body and mind, declaratory and injunctive reliefs, attorney's fees, expert fees and costs against the defendants, as well as such other relief as the Court deems to be just and proper.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over this action pursuant to 28 U.S.C. §451, §1331, §1337, §1343, §2201, §2202 and 42 U.S.C.A. §12181, *et seq.*, as it involves federal questions regarding the deprivation of the Plaintiff's rights under the ADA.

5. This Court has supplemental jurisdiction over the Plaintiff's allegations arising from the defendants' state law violations pursuant to 28 U.S.C. §1367(a).

6. Venue is proper in this district pursuant to 28 U.S.C. §1391(b), because all events, or omissions, giving rise to this action, and alleged herein, occurred in this district. Venue is also proper in this district, because the defendants' property, a public accommodation, which is the subject of this action, is located in, and does business within, this judicial district.

## PARTIES

7. The Plaintiff, SEMYON GRINBLAT, is, and has been at all times material hereto, a resident of Monmouth County, New Jersey.

8. The Plaintiff is disabled and is expressly authorized under §308 of the ADA, 42 U.S.C. §12188(a) – incorporating by reference the remedies and procedures found in 42 U.S.C. 2000a-3, §204 of the Civil Rights Act of 1964 – to bring this action.

9. The defendants, CORELLE BRANDS HOLDINGS INC. and HABITAT FOR HUMANITY NEW YORK CITY, INC., own, and/or lease, and/or have control over, and/or operate, and at all relevant times operated, the two stores, and/or the sales establishments, which are located next to each other and the parking lots, which they share,

3

and which are located in front of these stores and behind them. The two stores and the two adjacent parking lots are hereinafter referred to as the "Subject Facilities".

10. Upon information and belief, the defendant, CORELLE BRANDS HOLDINGS INC., owns, and/or leases, and/or has control over, and/or operates, and at all relevant times operated, a store, and/or a sales establishment, under the name Corningware Corelle. The defendant, at all relevant times, also owned, and/or leased, and/or had control over, and/or operated, and/or maintained two adjacent parking lots, located in front of and behind the store, which it designed, and/or constructed, and/or painted, and/or placed markings on, and/or altered, and/or modified, for the purpose of providing parking spaces for its customers, and is located at 62-01 Northern Blvd., Woodside, NY 11377. The defendant is an American for-profit corporation organized under the laws of Delaware. The defendant is licensed to conduct business activities in New York State with the New York Department of State, whose website shows that the defendant's registered agent's address is C T Corporation System, 111 Eighth Avenue, New York, NY 10011. The New York Department of State website also shows that the address, to which the NY Department of State will mail process, if accepted on behalf of the entity, is the following: C/O C T Corporation System, 111 Eighth Avenue, New York, NY 10011.

11. Upon information and belief, the defendant, CORELLE BRANDS HOLDINGS INC., at all relevant times was, and currently is, either an owner, lessor, lessee, or operator of the commercial real estate lot in Queens County, on which the Subject Facilities are located, and of the building, or buildings, in which they operate. Upon information and belief, the defendant is a landlord, in addition to being an owner, and/or lessee, and/or operator of the store Corningware Corelle, and leases its building, or buildings, and land, on which the

4

parking lots of the Subject Facilities are located, to the defendant HABITAT FOR HUMANITY NEW YORK CITY, INC.

12. Upon information and belief, the defendant, HABITAT FOR HUMANITY NEW YORK CITY, INC., owns, and/or leases, and/or has control over, and/or operates, and at all relevant times operated, a store, and/or a sales establishment, under either the name Habitat for Humanity New York City ReStore, or Habitat for Humanity ReStore NYC. The defendant, at all relevant times, also owned, and/or leased, and/or had control over, and/or operated, and/or maintained, two adjacent parking lots, located in front of and behind the store, which it designed, and/or constructed, and/or painted, and/or placed markings on, and/or altered, and/or modified, for the purpose of providing parking spaces for its customers, and is located at 62-01 Northern Blvd., Woodside, NY 11377. The defendant is an American not-for-profit corporation organized under the laws of New York. Neither the name, nor address, of the defendant's registered agent are provided on the New York Department of State's website, which shows that the New York Department of State will mail process, if accepted on behalf of the entity, to the following address: Habitat for Humanity New York City, Inc., 111 John St., 23rd Fl., New York, NY 10038.

13. New York State law requires each corporation to have a designated registered agent, on whom service of process may be made. Under the New York Business Corporation Law, a "designating corporation is required to deliver to the department of state a certificate of amendment or change providing for the designation by the corporation of a new address and upon its failure to file such certificate, its authority to do business in this state should be suspended." BSC §306-A(a)(4). "Upon the failure of the designating corporation to file a certificate of amendment or change providing for the designation by the corporation of

the new address after the filing of a certificate of resignation for receipt of process with the secretary of state, its authority to do business in this state shall be suspended… ." BSC §306-A(b) "In any case in which a corporation suspended pursuant to this section would be subject to the personal or other jurisdiction of the courts of this state …, process against such corporation may be served upon the secretary of state as its agent pursuant to this section. Such process may issue in any court in this state having jurisdiction of the subject matter." BSC §306-A(e)(1)

14. As the defendant, HABITAT FOR HUMANITY NEW YORK CITY, INC., provided neither the name, nor address of its registered agent, to the New York Department of State, its authority to do business in New York State is suspended pursuant to BSC §306-A. Nevertheless, service of process on it is effective, because it is served upon the Secretary of State. BSC §306-A(e)(2).

15. The defendants, CORELLE BRANDS HOLDINGS INC. and HABITAT FOR HUMANITY NEW YORK CITY, INC., operate the respective Subject Facilities, which are stores, and/or sales establishment. Both of them are public accommodations within the meaning of Title III of the ADA, 42 U.S.C. §12181(7)(E) and 28 CFR §36.104 Place of public accommodation (5), New York State Human Rights Law §292(9) and New York City Human Rights Law, Admin. Code of the City of New York, §8-107(4).

16. Defendants JOHN DOE 1-X and Limited Liability Companies, Partnerships and Corporations 1-X are persons or entities yet unknown, but who or which might share liability as owners or tenants of the Subject Facilities. At all relevant times they might have been, and currently might be, either owners, lessors, or operators of the commercial real estate lot in Queens County, on which the Subject Facilities are located, and of the building,

or buildings, in which they operate. Either one or several of them might be a landlord and lease its/their building and land, on which the parking lots of the Subject Facilities are located, to the defendants, CORELLE BRANDS HOLDINGS INC. and HABITAT FOR HUMANITY NEW YORK CITY, INC. The Plaintiff reserves the right to amend this Complaint to add such persons or entities as defendants when discovered during the course of this action.

17. Either one of the defendants, or all of them, at all relevant times, was an owner, and/or lessor, and/or lessee, and/or tenant, and/or managed, and/or had control over, and/or operated, and/or designed, and/or constructed, and/or built, and/or painted, and/or marked, and/or maintained, and/or altered the building, or buildings, and/or the stores, and/or the parking lots adjacent to the stores, and/or the sales establishments, which are operated by the defendants, CORELLE BRANDS HOLDINGS INC. and HABITAT FOR HUMANITY NEW YORK CITY, INC. Either one of the defendants, or all of them together, simultaneously, or at different times, owned, and/or leased, and/or leased to, and/or designed, and/or constructed, and/or painted, and/or placed markings on, and/or operated, and/or built, and/or maintained, and/or altered the parking lots for the purpose of providing parking spaces for the stores' customers. The stores, and/or the sales establishments, and the adjacent parking lots comprise the Subject Facilities and are located at 62-01 Northern Blvd., Woodside, NY 11377.

18. The defendants are jointly and severally liable for the design, construction, maintenance, control, alteration and/or operation of the parking lots adjacent to the stores. They are, together with the stores, are the subjects of this lawsuit and are part of the Subject Facilities.

## CLASS ACTION

19. The Plaintiff brings this suit for declaratory and injunctive relief and as a class action, pursuant to F.R.C.P. 23, on behalf of all those similarly situated who, as persons who must use wheelchairs by reason of various disabilities, and who use or desire to use the services and accommodations offered to the public by the defendants, are protected by, and are beneficiaries of, the ADA, the New York State Civil Rights Laws, the New York State Human Rights Laws and the New York City Human Rights Laws.

20. The Plaintiff, complaining for himself, and all other similarly situated disabled individuals in the City and State of New York, hereby alleges the following:

   a. The class is so numerous that joinder of all members, whether otherwise required or permitted, is impracticable;

   b. There are questions of law, or fact, common to the class, which predominate over any questions affecting only individual members;

   c. The claims or defenses of the representative party are typical of the claims, or defenses, of the class;

   d. The representative party will fairly and adequately protect the interests of the class; and

   e. A class action is superior to other available methods for the fair and efficient adjudication of the controversy.

21. The claims of the Plaintiff are typical of those of the class. The class, similarly to the Plaintiff, was also not able to have access to the Subject Facilities because of the architectural barriers.

22. The Plaintiff will fairly and adequately represent and protect the interests of the members of the class, because, in accordance with Fed. R. Civ. P. 23(g), he has retained, and is represented by, an experienced counsel, who has done the work in identifying and investigating potential claims in the action, who knows the applicable law, who may commit resources to representing the class, who would represent the Plaintiff in complex class action litigation, and because the Plaintiff has no interests antagonistic to the members of the class.

23. A class action may be maintained under Fed. R. Civ. P. 23(a), which is satisfied, as prosecuting separate actions by, or against, individual class members would create a risk of adjudications with respect to them that, as a practical matter, would be dispositive of the interests of the other members, not parties to the individual adjudications, or would substantially impair, or impede, their ability to protect their interests. That risk includes, but is not limited to, the defendants removing the architectural barriers without either compensating members of the class, or paying them compensatory, and/or statutory, and/or punitive damages, for discrimination, discomfort, personal injuries, pain of body and mind, emotional distress, inconvenience and humiliation, which the class members have suffered as a result of the defendants' actions, which violated the ADA, the New York State Civil Rights Laws, the New York State Human Rights Laws and the New York City Human Rights Laws.

24. Class certification of the claims is appropriate pursuant to Fed. R. Civ. P. 23(b)(2), because the defendants had acted, or refused to act, on grounds that apply generally to the class, so that final injunctive relief, or corresponding declaratory relief, is appropriate respecting the class as a whole.

25. Alternatively, class certification is appropriate under Fed. R. Civ. P. 23(b)(3), because questions of law, or fact, common to class members, clearly predominate over any questions affecting only individual class members, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation.

26. Judicial economy will be served by maintenance of this lawsuit as a class action in that it is likely to avoid the burden that would be otherwise placed upon the judicial system by the filing of numerous similar suits by people who use wheelchairs in the Eastern District of New York.

27. Clarity, consistency and uniformity in law will also be preserved, as maintenance of this lawsuit as a class action will likely eliminate the possibility of inconsistent verdicts, which may be issued, if plaintiffs were to initiate individual lawsuits against the defendants.

28. References to the Plaintiff shall be deemed to include the named Plaintiff and each member of the class, unless otherwise indicated.

## STATUTORY SCHEME

29. On July 26, 1990, United States Congress enacted the ADA, establishing important civil rights for individuals with disabilities, including the right to full and equal enjoyment of goods, services, facilities, privileges and access to places of public accommodation.

30. Congress made the following findings:

    a. Some 43,000,000 Americans have one or more physical or mental disabilities, and this number is increasing as the population as a whole is growing older;

    b. Historically, society has tended to isolate and segregate individuals with disabilities, and, despite some improvements, such forms of discrimination against individuals with disabilities continue to be a serious and pervasive social problem;

    c. Discrimination against individuals with disabilities persists in such critical areas as employment, housing, public accommodations, education, transportation, communication, recreation, institutionalization, health services, voting and access to public services;

    d. Individuals with disabilities continually encounter various forms of discrimination, including outright intentional exclusion, the discriminatory effects of architectural, transportation, and communication barriers, overprotective rules and policies, failure to make modifications to existing facilities and practices, exclusionary qualification standards and criteria, segregation, and regulation to lesser services, programs, activities, benefits, jobs or other opportunities; and

    e. The continuing existence of unfair and unnecessary discrimination and prejudice denies people with disabilities the opportunity to compete on an equal basis and to pursue those opportunities for which our free society is justifiably famous, and costs the United States billions of dollars in unnecessary expenses resulting from dependency and non-productivity.

42 U.S.C. §12101(a)(1)-(3), (5) and (8)

31. Furthermore, Congress also explicitly stated that the ADA had to:

    a. Provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities;

    b. Provide clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities; and

    c. Invoke the sweep of congressional authority, including the power to enforce the fourteenth amendment and to regulate commerce, in order to address the major areas of discrimination faced day-to-day by people with disabilities.

42 U.S.C. §12101(b)(1)(2) and (4)

32. Furthermore, pursuant to 42 U.S.C. §12182 and 28 CFR §36.201(a), the congressional intent was to ensure that no place of public accommodation may discriminate against an individual on the basis of such individual's disability, with regard to the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations at that place of public accommodation.

33. Congress provided commercial businesses at least 18 months from enactment to make their facilities compliant with the regulations in the ADA. The effective date of Title III of the ADA was January 26, 1992, or January 26, 1993, if defendant has ten (10), or fewer, employees and gross receipts of $500,000, or less. 42 U.S.C. §12183; 28 CFR §36.508(a).

34. The 2000 United States census indicates that in the civilian non-institutionalized population more than 49.7 million people in the United States have a disability. The census also indicates that more than 1.39 million New Yorkers have a mobility disability.

35. The ADA, the New York State Civil Rights Laws, the New York State Human Rights Laws and the New York City Human Rights Laws recognize individuals with disabilities as a protected class. 42 U.S.C. §12182(a)

36. It is unlawful for a private entity, which owns, leases, leases to, or operates a place of public accommodation, to discriminate against an individual with a disability. 42 U.S.C. §12182(b)(1)(A), 28 CFR §36.201(a) and (b)

37. Pursuant to the mandates of 42 U.S.C. §12134(a), on July 26, 1991, the Department of Justice, Office of the Attorney General, promulgated Federal Regulations to implement the requirements of the ADA, known as the ADAAG, 28 CFR §36, under which it may obtain civil penalties of up to $110,000 for the first violation and $150,000 for any subsequent violation.

12

38. The landlord, who owns the building that houses a place of public accommodation and the tenant, who owns, or operates the place of public accommodation, have a non-delegable duty to comply with the ADA, the New York State Civil Rights Laws, the New York State Human Rights Laws and the New York City Human Rights Laws. 28 CFR §36.201(a) and (b)

39. The Subject Facilities affect interstate commerce within the meaning of the ADA. 42 U.S.C. §12181(7)(E) and 28 CFR §36.104 Place of public accommodation (5)

40. Regardless of any contractual provisions stating otherwise, the landlord and owner of the property, which houses the public accommodation, cannot escape liability for the tenant's failure to comply with the ADA, the New York State Civil Rights Laws, the New York State Human Rights Laws and the New York City Human Rights Laws. 28 CFR §36.201.

41. Discriminatory intent is not required to establish liability under the ADA, the New York State Civil Rights Laws, the New York State Human Rights Laws and the New York City Human Rights Laws.

42. One type of disability discrimination is the failure of an owner, or an operator, of a public accommodation to remove those architectural barriers, removal of which is readily achievable.

> A public accommodation shall remove architectural barriers in existing facilities, including communication barriers that are structural in nature, where such removal is readily achievable, i.e., easily accomplishable and able to be carried out without much difficulty or expense.

28 CFR §36.304

43. If an individual with a disability is dissuaded from entering, or receiving services of a place of public accommodation, because of the existence of an architectural barrier, the landlord and tenant will be guilty of discrimination on the basis of disability.

44. The defendants must remove all barriers, removal of which is readily achievable, that deny an individual with a disability the opportunity to participate in, or benefit from, services, or accommodations, on the basis of their disability. 28 CFR §36.304

45. Removal of the architectural barriers is readily achievable by the defendants.

46. The Plaintiff is informed and believes, and therefore alleges, that the Subject Facilities have begun operations, and/or undergone substantial remodeling, repairs and/or alterations, since January 26, 1990, and/or have sufficient income to make readily achievable accessibility modifications.

## FACTUAL ALLEGATIONS AND FIRST CAUSE OF ACTION

### Violations of the ADA

47. The Plaintiff, who was born in 1949, is an elderly man aged beyond his 69 years. He suffers from debilitating diseases and was diagnosed with a neurological condition, which affects his walking. The Plaintiff's treating neurologist determined that he has gait dysfunction, the causes of which include peripheral neuropathy due to diabetes mellitus, chronic right basilar ganglia lacunar infarct and cerebellar ataxia. The Plaintiff's treating neurologist also determined that he has essential tremor. Furthermore, the Plaintiff has decreased vision due to glaucoma and is blind in the right eye. The Plaintiff's gait is unsteady and he falls when he walks short distances. His treating neurologist prescribed him a wheelchair and a handicapped parking placard. The Plaintiff obtained the wheelchair and uses it regularly.

The New Jersey Motor Vehicle Commission issued him a disabled person parking placard together with a handicapped identification card. The handicapped placard can be used in any car, in which the Plaintiff is travelling. The Plaintiff relies on his wheelchair and parks appropriately in handicapped accessible parking spaces. He also needs appropriate and statutorily mandated space next to that car, so that he may transfer from the car to the wheelchair. The Plaintiff is disabled under the statute, which in pertinent part states that

> *disability* means, with respect to an individual, a physical or mental impairment that substantially limits one or more of the major life activities of such individual… . The phrase *major life activities* means functions such as caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working.

28 CFR §36.104

48. The Plaintiff's adult son visits the Plaintiff, manages his care and takes him to places the Plaintiff wants to visit, including stores, restaurants, parks, doctors and medical facilities in New Jersey, where he currently resides, and New York, where he previously resided for decades and where his son and friends still reside.

49. In September 2018, the Plaintiff came to the defendants' Subject Facilities by car to enjoy full and equal access to, and the benefits of, all the accommodations and services offered at the defendants' properties.

50. Each one of the defendants operates a store and/or a sales establishment and the parking lots adjacent to them.

51. The defendant, CORELLE BRANDS HOLDINGS INC., operates the store that sells dishes, pots, utensil, items used in household kitchens, as well as other merchandize.

52. The defendant, HABITAT FOR HUMANITY NEW YORK CITY, INC., operates the store that sells used items, such as furniture, dishes, mugs, photo frames and other merchandize.

53. Adjacent to the defendants' stores are two parking lots, which comprise part of the Subject Facilities, as they are provided by the defendants for their customers. The defendants own the stores and the parking lots, and/or lease, and/or operate them, and/or designed them, and/or painted them, and/or marked them, and/or exercise control over them, and/or maintain them, and/or altered them since 1992.

54. The Subject Facilities are public accommodations within the meaning of Title III of the ADA, 42 U.S.C. §12181(7)(E) and 28 CFR §36.104 Place of public accommodation (5), New York State Human Rights Law §292(9) and New York City Human Rights Law, Admin. Code of the City of New York, §8-107(4).

55. The defendants designated, designed and constructed two parking lots for their customers. One of them is in the front of the defendants' stores and the other one is behind them.

56. A sign on the wall in the rear parking lot, in the back of the stores, informs visitors that parking is provided exclusively for the tenants and customers of Corningware, ReStore and Cosmo. Both Corningware and ReStore are the names of the stores operated by the defendants. Corningware is operated by the defendant CORELLE BRANDS HOLDINGS INC. and ReStore by the defendant HABITAT FOR HUMANITY NEW YORK CITY, INC.

57. There are 11 parking spaces in the parking lot located in front of the defendants' stores. None of them are designated as handicapped parking spaces.

58. There are 10 parking spaces in the parking lot located behind the defendants' stores. Neither one of them is designated as a handicapped parking space.

59. The Plaintiff's son drove to the Subject Facilities with the Plaintiff and attempted to park his vehicle in the parking lot located in front of the stores, the location closest to the stores' entrances. That was not possible, because all of the parking spaces were occupied by cars.

60. The Plaintiff's son then drove with the Plaintiff to the parking lot located behind the defendants' stores. All of the parking spaces there were occupied by cars, as well. Because of that, the Plaintiff had to wait in the car for 20 minutes for one of the cars to leave a parking space.

61. The Plaintiff's son parked his vehicle in the solely available parking space, which was vacated immediately prior to him parking in it by the car that occupied it. That parking space was second from the right, next to the wall.

62. The Plaintiff's son removed the wheelchair from the trunk of the car and placed it on the pavement, behind his car. It was not possible to place it on the right side of his car, where the Plaintiff was sitting, because another car was parked immediately to the right.

63. The Plaintiff's son then opened the right rear door of the car, where the Plaintiff was sitting, and assisted him with exiting the car. There was almost no space for the Plaintiff to exit the car, as the other car on the right was parked very close to the Plaintiff's car.

64. As there was no access aisle, the Plaintiff had to walk in the narrow, confined, space between the cars to reach the wheelchair.

65. The parking space and the surface of the parking lot was very steep and the Plaintiff barely avoided falling while he walked to the wheelchair.

66. When the Plaintiff reached the wheelchair, it rolled backwards, as the surface was too steep. The Plaintiff barely avoided falling and became upset and frustrated as a result.

67. The Plaintiff then attempted to use his hands to rotate the wheelchair's wheels in order to move it, but it proved to be impossible, as it was very difficult to roll it up the impermissibly steep slope on the cracked, uneven and damaged surface. As a result, the Plaintiff's son pushed the wheelchair with the Plaintiff on it up the steep slope, which was difficult and inconvenient to Plaintiff, who became further frustrated.

68. As there was no designated accessible walkway to the stores, the Plaintiff had to travel to the defendants' stores in his wheelchair behind the parked cars, in traffic, as the cars entered and exited the busy parking lot.

69. The Plaintiff had to endure being pushed in the wheelchair for about 250 feet on the steep, cracked and uneven surface, in traffic, to reach the entrance of Corningware Corelle store.

70. When the Plaintiff was paying for the items inside of Corningware Corelle store, he was not able to extend his feet, knees and toes under the counter, because there was no space under it. It was used to display the merchandize offered for sale at the store.

71. The Plaintiff had similar experience at the adjacent store, which is operated by the defendant HABITAT FOR HUMANITY NEW YORK CITY, INC. under the name Habitat for Humanity ReStore NYC. When the Plaintiff was paying for the items he was purchasing at the counter, there was no space under it for the Plaintiff to extend his knees, feet and toes. The Plaintiff became further frustrated and upset as a result.

72. The Plaintiff's inconveniences continued on the way back to the car. Once again, he had to endure being pushed in traffic and was not able to roll the wheelchair himself, because the surface of the pavement was steep, cracked, damaged and uneven.

73. When the Plaintiff reached the vehicle, he realized that another car, which was parked on the right side of his car, has left and another car was parked there instead. The newly parked

car was parked very close to the Plaintiff's car and it was not possible for the Plaintiff to enter the car on either the right, or left side. As a result, the Plaintiff had to wait for 20 minutes for the driver of the parked car to return and move it.

74. When the Plaintiff stood up from the wheelchair and attempted to transfer from it to the car, the wheelchair rolled backwards and the Plaintiff barely avoided falling on the steep surface. That experience further aggravated, frustrated and upset him.

75. The Subject Facilities' parking lots were either designed by people, who did not have the Plaintiff and his needs, and needs of others similarly situated, in mind, to accommodate him and facilitate his access to the Subject Facilities, or worse.

76. Frustrated, disappointed and humiliated, the Plaintiff left the Subject Facilities' parking lot.

77. The Subject Facilities are located not far from the Plaintiff's son's home, in Woodside, Queens. The Plaintiff enjoys visiting that vibrant neighborhood and comes there often.

78. The defendants' Subject Facilities are conveniently located and the Plaintiff intends to visit them, purchase items offered for sale in them and enjoy their services, as soon as the architectural barriers are removed.

79. The Plaintiff had difficulties gaining access to the Subject Facilities and paying for the items, because of the unlawful architectural barriers, and therefore suffered an injury in fact.

80. Since at least September 2018, the defendants have engaged in unlawful practices in violation of the ADA, the New York State Civil Laws, the New York State Human Rights Laws and the New York City Human Rights Laws.

81. The Plaintiff has difficulties visiting the defendants' Subject Facilities, continues to be discriminated against due to the architectural barriers, which remain at the Subject

Facilities, all in violation of the ADA, the New York State Civil Rights Laws, and the New York State and the New York City Human Rights Laws. The barriers to access the Subject Facilities have effectively denied the Plaintiff ability to visit the properties and have caused him personal injuries, including, but not limited to, pain of body and mind, emotional distress, embarrassment, humiliation and frustration.

82. Because the Subject Facilities are public accommodations, the defendants are responsible for complying with the ADA. 28 CFR §36.304

83. The numerous architectural barriers to access the Subject Facilities have endangered the Plaintiff's safety.

84. The defendants' Subject Facilities violate 42 U.S.C. §12181, §12182, §12183, §12204 of the ADA, 28 CFR §36.302 and §36.304.

85. The Department of Justice ("DOJ") published revised regulations for Title III of the ADA in the Federal Register on September 15, 2010. "These regulations adopted revised, enforceable accessibility standards called the 2010 ADA Standards for Accessible Design, '2010 Standards'". (See, 2010 Standards, Overview) These standards "set minimum requirements – both scoping and technical – for newly designed and constructed, or altered … public accommodations, and commercial facilities to be readily accessible to and usable by individuals with disabilities." Id. The DOJ provided that document in one publication and it includes the 2010 Standards for public accommodations and commercial facilities, which consist of the Title III regulations at 28 CFR Part 36, subpart D, and the 2004 ADAAG at 36 CFR Part 1191, appendices B and D.

86. The defendants' Subject Facilities are discriminating against the Plaintiff, and others similarly situated, by denying him access to, as well as full and equal enjoyment of, the

goods, services, facilities, privileges, advantages and/or accommodations of the building, or buildings, and its/their parking lots by means of the architectural barriers, the existence of which is in violation of the ADA, including, but not limited to, those listed below.

87. "**Minimum Number.** Parking *spaces* complying with 502 shall be provided in accordance with Table 208.2 except as required by 208.2.1, 208.2.2, and 208.2.3. Where more than one parking *facility* is provided on a *site*, the number of *accessible spaces* provided on the *site* shall be calculated according to the number of *spaces* required for each parking *facility*." 2010 Standards §208.2. In a facility with 1 to 25 parking spaces, there must be at least one handicapped parking space. 2010 Standards Table §208.2 Parking Spaces. The defendants disregarded that regulation in its entirety and did not designate even a single parking space in its two parking lots. As there are 11 parking spaces in the parking lot in front of the stores, at least one handicapped parking space must be provided. Similarly, as there are 10 parking spaces in the parking lot behind the stores, there must be at least one handicapped parking space there.

88. "**Identification.** Parking *space* identification signs shall include the International Symbol of *Accessibility* complying with 703.7.2.1. Signs identifying van parking *spaces* shall contain the designation "van accessible." Signs shall be 60 inches (1525 mm) minimum above the finish floor or ground surface measured to the bottom of the sign." 2010 Standards §502.6. The defendants disregarded that rule and failed to install any handicapped parking signs.

89. "**Floor or Ground Surfaces.** Parking *spaces* and access aisles serving them shall comply with 302. Access aisles shall be at the same level as the parking *spaces* they serve. Changes in level are not permitted. EXCEPTION: Slopes not steeper than 1:48 shall be permitted."

2010 Standards §502.4. Thus, the maximum permissible slope must not be steeper than 2.08%. The defendants grossly violated that rule. They did not designate even a single handicapped parking space in the two of their parking lots. The parking space, in which the Plaintiff's car was parked, has a cross slope as steep as 5.85%, which is equivalent to 1:17.09. There are no designated access aisles in the two parking lots. The parking space located immediately to the right of the parking space, in which the Plaintiff's car was parked, has a cross slope of 6.65%, which is equivalent to 1:15.04. Because there was no designated handicapped parking space, the Plaintiff had to wait for the non-handicapped parking space to become available prior to parking there. The Plaintiff was barely able to leave the vehicle after it was parked, because the space between it and the adjacent car, on the right, was very narrow. On the way back from the stores, the Plaintiff had to wait for the car to the right of his to leave in order to get back inside of his car for as much as 20 minutes. His wheelchair rolled backwards on the steep slope as he attempted to sit on it. He barely avoided falling as he was transferring between the wheelchair and the car, which greatly frustrated him. He felt humiliated and distressed as a result.

90. "**Floor or Ground Surfaces.** Access aisles are required to be nearly level in all directions to provide a surface for wheelchair transfer to and from vehicles. The exception allows sufficient slope for drainage." 2010 Standards §Advisory 502.4. The defendants grossly disregarded that regulation and did not install an access aisle. The parking space, located immediately to the right of the parking space, in which the Plaintiff's car was parked, and which he used to transfer to the car from the wheelchair, has a cross slope of 6.65%, which is equivalent to 1:15.04. The Plaintiff was barely able to stand up and nearly fell. The

wheelchair rolled backwards on the steep surface, further making it difficult for the Plaintiff to transfer to it and control its movement once he was on it.

91. "**General.** Floor and ground surfaces shall be stable, firm, and slip resistant and shall comply with 302." 2010 Standards §302.1. The ground surface at the Subject Facilities' rear parking lot is impermissibly steep, with slopes greater than 6%, which is equivalent to 1:16.7. Furthermore, the pavement is cracked, damaged and uneven.

92. "**Relationship to Accessible Routes.** Parking *spaces* and access aisles shall be designed so that cars and vans, when parked, cannot obstruct the required clear width of adjacent *accessible* routes." 2010 Standards §502.7. The defendants violated that rule, did not design handicapped parking spaces and access aisles, and therefore do not have accessible routes in the rear parking lot.

93. "**Relationship to Accessible Routes.** Wheel stops are an effective way to prevent vehicle overhangs from reducing the clear width of accessible routes." 2010 Standards § Advisory 502.7. The defendants did not install wheel stops. As a result, the Plaintiff was not able to ride in his wheelchair in between the wall of the rear parking lot and parked cars, in the safe area. Instead, he had to ride in traffic. Cars entered and exited the rear parking lot while the Plaintiff's son pushed the Plaintiff in his wheelchair. The moving cars endangered the Plaintiff's safety and further frustrated him.

94. "**Access Aisle.** Access aisles serving parking *spaces* shall comply with 502.3. Access aisles shall adjoin an *accessible* route. Two parking spaces shall be permitted to share a common access aisle." 2010 Standards §502.3 The defendants failed to design an access aisle. It is absent in their parking lots, together with handicapped parking spaces.

95. "**Marking.** Access aisles shall be marked so as to discourage parking in them." 2010 Standards §502.3.3 The defendants failed to mark any aisle in their parking lots as an access aisle.

96. "**Access aisle.** Accessible routes must connect parking spaces to accessible entrances. In parking facilities where the accessible route must cross vehicular traffic lanes, marked crossings enhance pedestrian safety, particularly for people using wheelchairs and other mobility aids. Where possible, it is preferable that the accessible route not pass behind parked vehicles." Advisory 2010 Standards §502.3. The defendants failed to design accessible handicapped parking spaces, marked crossings and accessible route. The route designed by the defendants passed behind parked and moving vehicles, some of which entered and exited the parking spaces while the Plaintiff travelled in it, which endangered his safety and frustrated him.

97. "**Location.** Access aisles shall not overlap the *vehicular* way. Access aisles shall be permitted to be placed on either side of the parking *space* except for angled van parking *spaces* which shall have access aisles located on the passenger side of the parking *spaces*." 2010 Standards § 502.3.4 The defendants ignored the rule and failed to place an access aisle in their parking lots.

98. "**Vehicle Pull-Up Space.** Passenger loading zones shall provide a vehicular pull-up *space* 96 inches (2440 mm) wide minimum and 20 feet (6100 mm) long minimum." 2010 Standards §503.2 The defendants failed to provide a loading zone.

99. "**Access Aisle.** Passenger loading zones shall provide access aisles complying with 503 adjacent to the vehicle pull-up space. Access aisles shall adjoin an *accessible* route and shall not overlap the *vehicular way*." 2010 Standards §503.3 "Access aisles serving vehicle

pull-up *spaces* shall be 60 inches (1525 mm) wide minimum." 2010 Standards §503.3.1 "Access aisles shall extend the full length of the vehicle pull-up *spaces* they serve." 2010 Standards §503.3.2 "Access aisles shall be marked so as to discourage parking in them." 2010 Standards §503.3.3 The defendants violated these rules. They failed to provide a loading zone and an access aisle.

100.    "**Forward Approach.** A portion of the counter surface that is 30 inches (760 mm) long minimum and 36 inches (915 mm) high maximum shall be provided. Knee and toe space complying with 306 shall be provided under the counter. A clear floor or ground space complying with 305 shall be positioned for a forward approach to the counter." 2010 Standards §904.4.2. The defendants violated that rule. Knee and toe spaces were not provided under the counters at both stores. As a result, the Plaintiff was not able to extend his feet, or toes, under them in order to reach the cashiers and had to rely on assistance.

101.    The individual Plaintiff, and all others similarly situated, will continue to suffer discrimination and injury without the immediate relief provided by the ADA, as requested herein. In order to remedy this discriminatory situation, the Plaintiff requires an inspection of the defendant's Subject Facilities in order to measure and photograph architectural barriers that are in violation of the ADA to determine all of the areas of non-compliance with the law.

102.    The defendants have failed to remove architectural barriers to accessibility to the Subject Facilities in violation of 42 U.S.C. §12182(b)(2)(A)(iv).

103.    Upon information and belief, since 1992 the defendants' Subject Facilities have undergone alterations to the areas, which affect, or could affect, access to or usability of, its place of public accommodation.

104.    The Subject Facilities have not been designed, constructed, altered, or maintained in compliance with the accessibility standards of Title III of the ADA.

105.    The defendants have violated their statutory obligation to ensure that their policies, practices and procedures address compliance with the 2010 Standards in that they did not make reasonable accommodations for the individual Plaintiff, and all others similarly situated, and also violated their obligation to remove architectural barriers in order to let disabled individuals enjoy goods and services provided by the public accommodation under their control, thus discriminating against them.

106.    To date, the architectural barriers, the removal of which was, and is, readily achievable, and other violations of the ADA, still exist at the Subject Facilities and have not been remedied, or altered, in such a way as to effectuate compliance with the provisions of the ADA.

107.    Pursuant to the ADA, 42 U.S.C. §12101, §12182 and 28 CFR §36.304, the defendants were required to make the Subject Facilities accessible to persons with disabilities, and should have removed architectural barriers by January 26, 1992. To date, the defendants have failed to comply with that mandate.

108.    The defendants' failure to remove the barriers to access constitutes a pattern and practice of intentional disability discrimination and is subject to enforcement under 42 U.S.C. §12188 and 28 CFR §503.

109.    It was not structurally impracticable for the defendants to make the Subject Facilities accessible.

110.    Removal of all architectural barriers existing at the Subject Facilities was, and is, readily achievable by the defendants.

111.    The defendants may, should and are required to make reasonable accommodations at the Subject Facilities and their making them would be readily achievable.

112.    Accommodations to the Plaintiff, and other persons similarly situated, and removal of architectural barriers at the Subject Facilities by the defendants, are readily achievable, would not impose an undue hardship on them and would not fundamentally alter the nature of their program, activity, or nature of the business.

113.    The Plaintiff has a realistic, credible, existing and continuing threat of discrimination from the defendants' non-compliance with the ADA in connection with the Subject Facilities.

114.    The defendants' failure to make their Subject Facilities accessible denied the Plaintiff and others, similarly situated, an equal opportunity to participate in, or to benefit from, services, or accommodations, on the basis of their disability.

115.    The effect of the practices complained of has been to deprive the Plaintiff, and all other similarly situated individuals, of the full and equal enjoyment of the Subject Facilities and to otherwise adversely affect his status as a member of the public interested in accessing the place of public accommodation owned, leased, leased to, constructed, maintained and/or operated by the defendants.

116.    The defendants' Subject Facilities are not accessible to, or readily usable by, individuals with disabilities.

117.    Pursuant to 42 U.S.C. §12188, this Court was vested with the authority to grant the Plaintiff injunctive relief, including an order to alter the Subject Facilities, to make them accessible to, and useable by, the Plaintiff, and other similarly situated individuals with

disabilities, to the extent required by the ADA, as well as close the Subject Facilities until the required modifications are completed.

118.     The defendants' flagrant disregard for the ADA, and the New York laws, which obligate them to make all readily achievable accommodations and modifications to remove architectural barriers to access and use of their Subject Facilities is legally inexcusable. Allowing the defendants to deleteriously detrimentally prolong their practices would encourage them to continue to blatantly disregard the ADA, the New York State Civil Laws, the New York State Human Rights Laws and the New York City Human Rights Laws, and discriminate against the Plaintiff, and other similarly situated individuals.

119.     The inexcusability of the defendants' actions is exacerbated by the fact that over 25 years have passed since the effective date of Title III of the ADA. During that time period they operated at a profit, should have accumulated sufficient funds to make alterations and had numerous opportunities to remove the architectural barriers and end discrimination, but intentionally chose not to do so. By intentionally not removing the architectural barriers, which barred the Plaintiff's access, inconvenienced and embarrassed him, humiliated him and caused him personal injuries, including emotional distress to him, and others similarly situated, the defendants gave a crystal-clear message to disabled customers that their patronage is neither needed, desired, welcomed, or wanted.

## SECOND CAUSE OF ACTION

### Violations of the New York State Human Rights Laws

120.     The Plaintiff re-alleges, and incorporates, by this reference, all allegations set forth in this complaint as if fully set forth herein.

121.    The New York State Human Rights Law, in relevant part, provides the following:

> It shall be an unlawful discriminatory practice for any person, being the owner, lessee, proprietor, manager, superintendent, agent or employee of any place of public accommodation … because of the … disability … of any person, directly or indirectly, to refuse, withhold from or deny to such person any of the accommodations, advantages, facilities or privileges thereof … to the effect that any of the accommodations, advantages, facilities and privileges of any such place shall be refused, withheld from or denied to any person on account of … disability … .

NYS Executive Law §296(2)(a)

122.    The defendants' Subject Facilities are places of public accommodation as defined in New York State Human Rights Law §292(9).

123.    The defendants have further violated the New York State Human Rights Law by being in violation of the rights provided under the ADA.

124.    The defendants are in violation of the New York State Human Rights Law by denying the Plaintiff, and others similarly situated, full and safe access to all of the benefits, accommodations and services of the Subject Facilities.

125.    The defendants do not provide the Plaintiff, and others similarly situated, with equal opportunity to use their public accommodations.

126.    The defendants have failed to make all readily achievable accommodations and modifications to remove barriers to access in violation of Executive Law §296(2)(c)(iii).

127.    As a direct and proximate result of the defendants' unlawful discrimination, which is in violation of the Executive Law, the Plaintiff has suffered, and continues to suffer, personal injuries, which include emotional distress, including, but not limited to, humiliation, embarrassment, stress and anxiety.

128.     The defendants have not provided the Plaintiff, and others similarly situated, with evenhanded treatment in violation of New York State Human Rights Law §296.

129.     The defendants' direct, or indirect, unequal treatment of the Plaintiff, and others similarly situated, was demonstrated when he was discriminated against.

130.     The defendants have, because of the Plaintiff's disability, directly, or indirectly, refused, withheld from, or denied him the accommodations, advantages, facilities, or privileges of their public accommodations.

131.     The defendants have demonstrated that the patronage, or custom, of the Plaintiff, and other similarly situated individuals, is unwelcome, unwanted, undesirable, unacceptable and objectionable.

132.     Pursuant to the New York State Human Rights Laws, the defendants, and their agents, discriminated against the Plaintiff.

133.     As a direct and proximate result of the defendants' unlawful discrimination, which was, and is, in violation of the New York State Human Rights laws, the Plaintiff has suffered, and continues to suffer, mental anguish and emotional distress, including, but not limited to, depression, humiliation, stress, embarrassment, insomnia, anxiety, loss of self-esteem and self-confidence, together with emotional pain and suffering.

134.     The Plaintiff requests compensatory damages from each defendant in the amount of $1,000 under the New York State Human Rights Law, NY CLS Exec §297(9).

### THIRD CAUSE OF ACTION

**Violations of the New York State Civil Rights Laws**

135.    The Plaintiff re-alleges, and incorporates by this reference, all the allegations set forth in this complaint, as if fully set forth herein.

136.    The defendants have violated the Plaintiff's civil rights on the basis of his disability.

137.    Consequently, the Plaintiff is entitled to recover the penalty prescribed by Civil Rights Law §40-c and §40-d, in the amount of $500 for each violation from each defendant.

138.    Pursuant to the New York Civil Rights law, §40-d, the defendants are guilty of a class A misdemeanor.

139.    Notice of this action is being served upon the attorney general, as required by New York Civil Rights Law, §40-d, in accordance with the statute.

### FOURTH CAUSE OF ACTION

**Violations of the New York City Human Rights Laws**

140.    The Plaintiff re-alleges, and incorporates by this reference, all the allegations set forth in this complaint, as if fully set forth herein.

141.    The New York City Human Rights Law, in a relevant part, provides the below.

> it shall be an unlawful discriminatory practice for any person who is the owner, franchisor, franchisee, lessor, lessee, proprietor, manager, superintendent, agent or employee of any place or provider of public accommodation:
>> 1. Because of any person's actual or perceived … disability …, directly or indirectly:
>>> (a) to refuse, withhold from or deny to such person the full and equal enjoyment, on equal terms and conditions, of any of the accommodations, advantages, services,

> facilities or privileges of the place or provider
> of public accommodation;

NYC Admin. Code §8-107(4)

142.    The defendants have not reasonably accommodated the Plaintiff, and other disabled individuals, in violation of New York City's Administrative Code §8-102(4), (16), (17), (18), §8-107(4) and §8-107(15).

143.    In violation of the New York City Administrative Code, the defendants have unlawfully discriminated against the Plaintiff and all others similarly situated.

144.    Reasonable accommodations and modifications are necessary to enable the Plaintiff, and all others similarly situated, the ability to enjoy non-restricted access and use of the defendants' Subject Facilities.

145.    In violation of the New York City Administrative Code the owners, operators, lessees, proprietors, managers, agents and/or employees of the defendants' Subject Facilities have, because of the actual, or perceived, disability of the Plaintiff directly, or indirectly, refused, withheld from, and denied him the accommodations, advantages, facilities, or privileges thereof.

146.    In violation of the New York City Administrative Code, on the basis of the Plaintiff's disability, the defendants have demonstrated that the patronage, or custom, of the Plaintiff, and all others similarly situated, is unwelcome, objectionable and not acceptable.

147.    The defendants are in violation of the New York City Human Rights Law by denying the Plaintiff full and safe access to all of the benefits, accommodations and services of the Subject Facilities.

148.     Pursuant to New York City Human Rights Law §8-502(c), notice of this action is being served upon the New York City Commission on Human Rights in accordance with the statute.

149.     As a direct and proximate result of the defendants' disability discrimination, in violation of the New York City Human Rights Laws, the Plaintiff has suffered, and continues to suffer, personal injuries, including severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, stress, embarrassment, anxiety, insomnia, loss of self-esteem and self-confidence, emotional pain and suffering.

150.     The Plaintiff requests compensatory damages in the amount of $1,000 from each defendant under the New York City Human Rights Law, NYC Admin. Code §8-125.

## ATTORNEY'S FEES AND COSTS

151.     The Plaintiff had to retain the undersigned counsel for the filing and prosecution of this action. The Plaintiff is entitled to have his reasonable attorney's fees, including litigation expenses, and costs, including expert fees, paid by the defendants, pursuant to the ADA, 28 CFR §36.505 and New York Executive Law §297(10). Furthermore, pursuant to the New York City Human Rights Law, the Court may award the prevailing party reasonable attorney's fees. Under that law's definition "prevailing" includes a Plaintiff, whose commencement of litigation has acted as a catalyst to effect policy change on the part of the defendant. NYCHRL, in pertinent part, states the below.

> In any civil action commenced pursuant to this section, the Court, in its discretion, may award the prevailing party reasonable attorney's fees, expert fees and other costs. For the purposes of this subdivision, the term "prevailing" includes a Plaintiff whose commencement of litigation has acted as a catalyst to effect policy change on the part of the

> defendant, regardless of whether that change has been implemented voluntarily, as a result of a settlement or as a result of a judgment in such Plaintiff's favor. The Court shall apply the hourly rate charged by attorneys of similar skill and experience litigating similar cases in New York County when it chooses to factor the hourly rate into the attorney's fee award.

NYC Admin. Code §8-502(g)


## COMPENSATORY AND STATUTORY MONETARY DAMAGES

152.     The Plaintiff requests compensatory damages in the amount of $1,000 from each

defendant under the New York State Human Rights Law, NY CLS Exec §297(9) and the

New York City Human Rights Law, NYC Admin. Code §8-125.

> In calculating compensatory damages under the NYSHRL and the NYCHRL, a Court in the Southern District of New York just a few months ago found relevant the fact that '[t]he New York City Human Rights Commission has deemed awards of $1,000 to be sufficient in cases where complainants did not establish any particular damage 'other than what a decent and reasonable individual would suffer when faced with such ignorant behavior.'

Shalto v. Bay of Bengal Kabob Corp., 2013 WL 867429, (quoting and adapting Kreisler, 2012 WL 3961304, at *14)


153.     The Plaintiff requests statutory monetary damages in the sum of $500 from each

defendant to compensate him for their violation of New York Civil Rights Law §40-c and

§40-d.

> New York Civil Rights Law §40-c holds that *any person* [emphasis added] who shall violate any of the provisions of New York Civil Rights Law §40-d 'shall for each and every violation thereof be liable to a penalty of not less than one hundred dollars nor more than five hundred dollars, to be recovered by the person aggrieved thereby in any Court of competent jurisdiction in the county in which the defendant

shall reside. … [T]his Court has the authority to order Defendant to pay Plaintiff the $500 in statutory damages contemplated by the New York Civil Rights Law for the disability discrimination Plaintiff has suffered… .

Shalto v. Bay of Bengal Kabob Corp., 2013 WL 867429

154.    The reason the Plaintiff requests $500 from each defendant, and not a lower amount

envisioned by the statutes, is due to the high number and extent of the violations, which

were alleged in detail in this complaint. Furthermore, the number of violations may be even

greater, and they may be even more extensive, than those alleged here and it is likely that

they will be revealed upon inspection of the Subject Facilities by an expert.


## PUNITIVE DAMAGES

155.    The Plaintiff requests punitive damages from each defendant to compensate him

for their violation of the New York City Human Rights Law.

With respect to punitive damages, "the standard for determining damages under the NYCHRL is whether the wrongdoer has engaged in discrimination with willful or wanton negligence, or recklessness, or a 'conscious disregard of the rights of others or conduct so reckless as to amount to such disregard.'" Chauca v. Abraham, 885 F.3d 122, 124 (2d Cir. 2018) (quoting Chauca v. Abraham, 30 N.Y.3d 325, 67 N.Y.S.3d 85, 89 N.E.3d 475, 481 (N.Y. 2017)). This standard requires "a lower degree of culpability" than is required for punitive damages under other statutes, as it "requires neither a showing of malice nor awareness of the violation of a protected right." Id. (quoting Chauca, 89 N.E.3d at 481).

Kreisler v. Humane Soc'y of N.Y., 2018 U.S. Dist. LEXIS 171147

## INJUNCTIVE RELIEF

156.     Pursuant to 42 U.S.C. §12188 this Court is vested with the authority to grant the Plaintiff injunctive relief, including an order to alter the Subject Facilities to make them readily accessible to, and useable by, individuals with disabilities to the extent required by the ADA, the New York State Civil Rights Law, the New York State Human Rights Law, the New York City Human Rights Law and close the Subject Facilities until the requisite modifications are completed.

157.     The Plaintiff requests the Court to issue a permanent injunction enjoining the defendants from disability discrimination.

158.     The Plaintiff requests the Court to issue a permanent injunction and order the defendants to alter their Subject Facilities to make them readily accessible to and usable by individuals with disabilities. To achieve that, the Plaintiff requests the Court to adapt relief ordered in Shariff v. Alsaydi, 2013 WL 4432218. The Plaintiff requests the Court to order the defendants to prepare architectural plans remedying the violations of the 2010 Standards and to provide the Plaintiff's counsel with those plans for review within 60 days of the Court's order. The Plaintiff also requests that the injunction provide him with 30 days to file a motion seeking relief should the defendants' proposed architectural plans be inadequate to remedy the 2010 Standards violations specified in this complaint. The Plaintiff further requests that the injunction requires the defendants to implement the architectural plans and remedy the violations within 60 days of either the Plaintiff's agreement, or a ruling by the Court stating that the plans are adequate.

159.     The Plaintiff requests the Court to issue a permanent injunction requiring the defendants to make all necessary modifications to the defendants' policies, practices and

procedures, so that the Plaintiff, and other persons similarly situated, would not be subject to further unlawful discrimination.

160.    Injunctive relief is also necessary to order the defendants to provide auxiliary aid, or service, and/or alternative methods, to allow the Plaintiff, and others similarly situated, to use the places of public accommodation in accordance with Title III of the ADA, the New York State Civil Rights Laws, the New York State Human Rights Laws and the New York City Human Rights Laws.

## DECLARATORY RELIEF

161.    The Plaintiff is entitled to a declaratory judgment concerning the violations of the ADA, the New York State and the New York City laws committed by the defendants specifying the rights of the Plaintiff, and other persons similarly situated, as to the removal of the architectural barriers from the defendants' Subject Facilities by the defendants and as to their policies, practices, procedures, facilities, goods and services.

## PRAYER FOR RELIEF

**WHEREFORE**, the Plaintiff hereby respectfully requests judgment against the defendants and that this Court grants the following relief:

A.    Certifies this case as a class action;

B.    Grants a permanent injunction

    i.) Enjoining the defendants, its officers, management personnel, employees, agents, successors and assigns from engaging in discrimination based on disability;

ii.) Requiring the defendants to alter their Subject Facilities to make them readily accessible to, and usable for, individuals with disabilities;

iii.) Compelling the defendants to make all necessary modifications to their policies, practices and procedures, so that the Plaintiff would not be subject to further discrimination;

iv.) Ordering the defendants to provide auxiliary aids and services, as well as to modify their policies, or procedures, or provide an alternative method, so that the Plaintiff would be able to obtain the full and equal enjoyment of the Subject Facilities owned, operated, maintained, or leased, by the defendants, in accordance with Title III of the ADA, the New York State Civil Rights Laws, the New York State Human Rights Laws and the New York City Human Rights Laws; and

v.) Ordering the defendants to make the Subject Facilities readily accessible to and usable by individuals with disabilities.

C. Enters declaratory judgment specifying the defendants' violations of the ADA, the New York State Civil Laws, the New York State Human Rights Laws and the New York City Human Right Laws and declares the rights of the Plaintiff, and other persons similarly situated, as to the defendants' policies, procedures, facilities, goods and services offered to the public;

D. Enters declaratory judgment specifying that the Subject Facilities owned, operated, leased, controlled, maintained and/or administered by the defendants violate the ADA, the New York State Civil Rights Law, the New York State Human Rights Law and the New York City Human Rights Law;

E.  Enters an order requiring the defendants to alter their facilities and amenities to make them accessible to, and usable by, individuals with disabilities to the full extent required by Title III of the ADA, the New York State Civil Rights Laws, the New York State Human Rights Laws and the New York City Human Rights Laws;

F.  Holds each of the defendants liable for $500 in statutory monetary damages for each violation and awards that sum to the Plaintiff pursuant to New York State Civil Rights Laws §40-c and §40-d;

G.  Holds each of the defendants liable for compensatory damages in the amount of $1,000 under the New York State Human Rights Law and the New York City Human Rights Law.

H.  Holds each of the defendants liable for punitive damages for their violation of the New York City Human Rights Law.

I.  Finds the defendants guilty of class A misdemeanor pursuant to New York State Civil Rights Law §40-d;

J.  Retains its jurisdiction over the defendants until their unlawful practices, acts and omissions no longer exist;

K.  Finds that the Plaintiff is a prevailing party in this litigation and awards attorney's fees, expert fees, costs and expenses, together with such other and further relief at law, or in equity, to which the Plaintiff, and other persons similarly situated, may be entitled; and

L.  Awards such other and further relief as it deems necessary, just and proper.

## **JURY DEMANDED**

The Plaintiff demands a trial by jury of all the issues of fact and damages.


Signed: December 4, 2018


*Michael Grinblat*
Michael Grinblat, Esq. (4159752)

Law Offices of Michael Grinblat
817 Broadway, Fourth Floor
New York, NY 10003
Tel: (347) 796-0712
Fax: (212) 202-5130
Email: michael.grinblatesq@gmail.com
*Attorney for the Plaintiff*